UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

SONIA B. BACH,

              Plaintiff,

    vs.

COMMUNITY TIES OF AMERICA, INC.,
JOHN DOES 1-5, JANE DOES 1-5,
DOE CORPORATIONS 1-5, DOE
PARTNERSHIPS 1-5, DOE NON-PROFIT
ORGANIZATIONS 1-5, DOE
GOVERNMENTAL AGENCIES 1-5,

              Defendants.

CIV. NO. 18-00103 LEK-WRP

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      Before the Court is Defendant Community Ties of
America, Inc.'s ("Defendant" and "CTA") Motion for Summary
Judgment ("Motion"), filed on June 26, 2019.  [Dkt. no. 37.]
Plaintiff Sonia B. Bach ("Plaintiff") filed her memorandum in
opposition to the Motion on July 19, 2019, and Defendant filed
its reply on July 26, 2019.  [Dkt. nos. 42, 43.]  This matter
came on for hearing on August 2, 2019.  On August 12, 2019, this
Court issued an entering order outlining the Court's decision on
the Motion.  [Dkt. no. 45.]  The instant Order supersedes that
entering order.  Defendant's Motion is hereby denied as moot as
to the portion of Count I asserting discrimination based on age

because that claim is dismissed, and the Motion is granted in all other respects.

**BACKGROUND**

## I.    Factual Background

The majority of the facts in this case are not in dispute. Defendant conducts certification and licensing activities in the State of Hawai`i for Community Care Foster Family Homes ("CCFFHs") and Case Management Agencies ("CMAs" and collectively "Providers").[1] Defendant hired Plaintiff for the full-time position of Compliance Manager ("CM") in 2010. [Def.'s Concise Statement of Facts in Supp. of Motion for Summary Judgment ("CSOF"), filed 6/26/19 (dkt. no. 36), at ¶¶ 1-4; Pltf.'s concise statement of facts in response to CSOF ("Responsive CSOF"), filed 7/19/19 (dkt. no. 41), at pg. 2.[2]] Plaintiff's role as a CM was to evaluate the Providers' compliance with Hawai`i regulations. [CSOF at ¶ 5.] Plaintiff received Defendant's Employee Manual in January 2012, which

---

[1] Defendant is a for-profit corporation with its principal place of business in Tennessee. [Notice of Removal at ¶ 4.]

[2] Plaintiff's CSOF consisted of a single paragraph specifically controverting Defendant's CSOF ¶ 46. Therefore, unless otherwise specified, the statements in Defendant's CSOF, other than ¶ 46, are deemed admitted. See Local Rule LR56.1(g) ("For purposes of a motion for summary judgment, material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party.").

prohibits, *inter alia*: unsatisfactory or careless work; the use of obscene or abusive language toward any supervisor, employee, or customer; and rudeness toward any customer. [Id. at ¶ 7.]

Full-time CMs such as Plaintiff were expected to work one day a week at Defendant's office or their home-offices, and four days in the field reviewing Providers, with two to three on-site reviews daily. CMs must complete their monthly quota of on-site reviews but could carry over up to four reviews in a month. [Id. at ¶¶ 9-10.] In 2011, Plaintiff received an improvement plan addressing a number of issues, including: 1) not meeting productivity/quality expectations; 2) negative performance ratings for timeliness/quality; and 3) negative communications towards coworkers. [Id. at ¶ 14.]

In October 2012, Plaintiff fell and injured herself, returning full-time from leave in December 2012. [Id. at ¶ 15.] Plaintiff received ongoing medical treatment for injuries related to her hand, shoulder, ankle, and hip. Plaintiff's impairments related to her ability to walk, lift, write, and drive precluded her from consistently performing work requiring more than thirty minutes of driving. [CSOF at ¶¶ 16-17.]

In mid-2013 and December 2013, Plaintiff complained to Defendant and the United States Department of Labor ("DOL") that Defendant had not correctly deposited funds into her 401(k) account. As a result of Plaintiff's complaints, the DOL

initiated an investigation and an April through June 2014 audit of Defendant's records. [Id. at ¶¶ 51-52.]

In July of 2013, Angel England became Defendant's Hawai`i Operations Manager. [Id. at ¶ 3.] At that time, she was aware of Plaintiff's performance history. Ms. England received additional complaints from Providers and coworkers that Plaintiff's communications were harsh and/or impolite. Fellow CMs also observed Plaintiff's reports were incorrect and missing relevant information. In 2013, Ms. England gave Plaintiff a negative performance evaluation rating for behavior and work quality. In 2014, Ms. England observed that Plaintiff's interpersonal communication was improving but she still received anonymous Provider complaints for Plaintiff's on-site communications. In December 2014, Ms. England gave Plaintiff a negative rating for interpersonal relationships on her performance evaluation. [Id. at ¶¶ 18-22.]

In April 2015, Plaintiff took leave for surgery, and on April 28, 2015, she emailed Ms. England, stating "'I have no idea when I can return to work.'" [CSOF at ¶¶ 23-24 (some citations omitted) (quoting CSOF, Decl. of Angel England ("England Decl."), Exh. 17 (email from Plaintiff)).] On May 1, 2015, Defendant notified Plaintiff she would be terminated if she did not return to work by May 11, 2015 when her accrued paid leave would be exhausted. [Id. at ¶¶ 25.] Plaintiff responded

4

that termination on that basis would be illegal and that
Defendant should consult its attorneys. [Responsive CSOF, Decl.
of Sonia B. Bach ("Bach Decl.") at ¶ 7.] On May 6 and 8, 2015,
Defendant informed Plaintiff it would not terminate her. [CSOF
at ¶ 26.] Over the next five months, Defendant repeatedly
inquired with Plaintiff as to whether, and when she could return
to work, with or without reasonable accommodation. The parties
discussed potential accommodations during Plaintiff's leave,
including limiting her driving to forty-five minutes, per her
physician's note, but Plaintiff disclaimed any need for
accommodation. [Id. at ¶¶ 27-28.] On September 8, 2015,
Plaintiff emailed Defendant's President and co-owner Ronald Lee
saying "'[t]here is really no adjustment to be made to get me
working . . . .'" [Id. at ¶ 29 (alterations in original)
(citing Decl. of Ronald Lee ("Lee Decl.") at ¶¶ 52-53; Exh. 48
(email from Plaintiff to Ronald Lee)).]

    After Ms. England took over Plaintiff's workload in
2015, she discovered Plaintiff had been consistently formatting
her reports incorrectly, including not basing the reports on the
applicable regulations, and incorrectly marking a Provider
deficient. At an unspecified date, three Providers requested a
different CM, complaining of Plaintiff's demanding, rude, and
demeaning communications. [CSOF at ¶¶ 30-31.] Other CMs
visiting Plaintiff's CCFFHs also reported Provider complaints

about Plaintiff's behavior, while four coworkers complained about her as well. Plaintiff was the only CM that Ms. England had Providers request to not conduct their evaluation. Ms. England believed that Plaintiff's performance was unsatisfactory and noncompliant with company policy due to these complaints. [Id. at ¶¶ 32-33.]

Ms. England, in consultation with Mr. Lee and Matthew Ockerman,[3] prepared a performance evaluation and probationary corrective action plan for Plaintiff. Ms. England issued them to Plaintiff upon Plaintiff's return to work on September 21, 2015. Plaintiff was informed she could be terminated if her performance did not improve. [Id. at ¶¶ 34-36.] Plaintiff's performance issues continued when she returned, which included: her failure to record Provider visit dates as instructed; improper citation of non-deficiencies in her reviews; incorrectly marking three Providers noncompliant without explanation; accepting incomplete corrective action plans; and failing to timely complete her reviews. [England Decl. at ¶¶ 53-54, 73, 150-51, 160-61, 164-75.] Thirteen of Plaintiff's thirty-three Providers commented negatively on Plaintiff's performance or behavior. [CSOF at ¶ 37.]

---

[3] Matthew Ockerman is Defendant's co-owner and Administrative Director. [CSOF, Decl. of Matthew Ockerman ("Ockerman Decl.") at ¶ 1.]

After Plaintiff's probationary period ended, Ms. England determined that Defendant should terminate Plaintiff due to her continued errors, poor production, and failure to meet quality standards. [Id. at ¶¶ 37-38.] However, before Ms. England acted on her decision, she received complaints from two additional Providers regarding Plaintiff. [Id. at ¶ 39.] Ms. England investigated the complaints and determined that Plaintiff mishandled a Provider-related complaint, and engaged in misconduct that resulted in a CCFFH client's healthcare agents revoking their healthcare agent status, leaving the client without a "surrogate healthcare agent." [England Decl. at ¶ 188.] In January of 2016, three more Providers complained about Plaintiff's conduct, two of whom asked that Defendant not assign Plaintiff to review their homes again. [Id. at ¶¶ 193-98.]

Ms. England began drafting Plaintiff's termination letter in the last week of January 2016. On February 3, 2016, Ms. England scheduled a termination meeting with Plaintiff for February 11, 2016. On February 5, 2016, Plaintiff emailed Ms. England a physician's note limiting her walking or driving to forty consecutive minutes. At that time, Plaintiff lived in Kaneohe, and Defendant's place of business was also in Kaneohe. Only two percent of Providers were within a reasonable guaranteed driving time of forty minutes or less. Assigning

Plaintiff to only that two percent of Providers would have been equivalent to less than a week of full-time work per month. [England Decl. at ¶¶ 57-67.] On February 5, 2016, Ms. England called Plaintiff. During that phone call, Plaintiff told Ms. England that she could not complete two assignments in Wahiawa but could complete her other assignments. Ms. England reassigned the Wahiawa Providers. Ms. England informed Plaintiff that Defendant would not be able to guarantee a forty-minute time limit on driving. Plaintiff responded that it was not an issue because she could leave the highway if necessary. [CSOF at ¶¶ 41-45.]

At the meeting on February 11, 2016, Ms. England terminated Plaintiff for her unprofessional behavior, continuous citing of Providers for issues not reviewed by Defendant, and inadequate productivity. [Id. at ¶ 46.] Defendant's paragraph 46 is the only paragraph in the CSOF contested by Plaintiff. Even so, Plaintiff does not specifically dispute the facts in paragraph 46. Plaintiff notes that she was terminated at the February 11, 2016 meeting after she had requested accommodations in early February and submitted a doctor's note on February 5, 2016 that limited driving as part of that accommodation. [Responsive CSOF at ¶ 46.] Therefore, the parties are in substantial agreement regarding the facts surrounding Plaintiff's termination. Defendant has not offered any facts to

8

contest Plaintiff's asserted timeline that her termination

occurred after her accommodation request was received by

Defendant. [CSOF at ¶¶ 44-46.]

At the time of Plaintiff's termination, Defendant's

Hawai`i Office employed eight staff, including Ms. England. One

of those employees, a thirty-eight-year-old administrative

assistant was terminated for excessive absences on the same day

as Plaintiff. [Id. at ¶ 47.] Defendant's other CMs were ages:

thirty-seven, sixty-two, sixty-four, sixty-five, and seventy.

Shortly after Plaintiff's termination, Defendant promoted a

then-part-time sixty-five-year-old CM to full-time CM to take

over Plaintiff's position. [Id. at ¶¶ 48-49.] Ms. England has

previously granted three employees' accommodation requests and

has never received a request that precluded performance of job

duties except for Plaintiff's. Neither Ms. England, Mr. Lee,

nor Mr. Ockerman stated that Plaintiff was terminated, or

expressed animus against Plaintiff, because of her age,

disability, request for an accommodation, or complaint about a

violation of law. [Id. at ¶ 53.]

## II.  Procedural Background

On June 21, 2017, Plaintiff filed her Complaint in the

Circuit Court of the First Circuit, State of Hawai`i. [Notice

of Removal of State Court Action to Federal Court ("Notice of

Removal"), filed 3/16/18 (dkt. no. 1), Decl. of Joseph A. Ernst,

Exh. A (Complaint).]  Plaintiff alleges she filed a Charge of

Discrimination with the Hawai`i Civil Rights Commission

("HCRC"), alleging discrimination due to age, disability, and

retaliation.  Plaintiff alleges that, on March 23, 2017, the

HCRC issued a Notice of Dismissal and Right to Sue letter.

[Complaint at ¶¶ 6-8.]

On March 16, 2018, Defendant removed the action to

this district court based on diversity jurisdiction.  [Notice of

Removal at ¶¶ 3-4.]  Count I of the Complaint alleges a

violation of Haw. Rev. Stat. § 378-2(a)(1) and (3) because

Plaintiff was wrongfully terminated due to discrimination based

on her age and disability.  [Complaint at ¶¶ 11-12.]  Count II

alleges retaliation against Plaintiff for opposing the alleged

discrimination based on age and disability in violation of

§ 378-2(a)(2).  [Id. at ¶ 17.]  Count III alleges a violation of

the Hawai`i Whistleblowers' Protection Act ("HWPA"), Haw. Rev.

Stat. § 378-62, for discrimination due to Plaintiff's reporting

of a violation of law.  [Id. at ¶ 19.]  Plaintiff has since

clarified that she is not asserting an aiding and abetting claim

under § 378-2(a)(3).  [Mem. in Opp. at 3.]

Plaintiff prays for the following relief:

reinstatement of her position with Defendant; general and

special damages, including back pay, front pay, and other

expenses; punitive damages; attorney's fees, costs, and

interest, including prejudgment interest; and any other
appropriate relief.  [Complaint at pgs. 6-7.]

**DISCUSSION**

**I.   Withdrawn Claim**

Plaintiff admits there is insufficient evidence to
support a claim for age discrimination.  [Mem. in Opp. at 3,]
Therefore, Plaintiff's claim in Count I alleging she was
discriminated against on the basis of age is dismissed.  See
Fed. R. Civ. P. 41(a)(2) ("Except as provided in Rule 41(a)(1),
an action may be dismissed at the plaintiff's request only by
court order, on terms that the court considers proper.").  In
light of the dismissal of Plaintiff's age discrimination claim,
the Motion is denied as moot as to the portion of Count I
alleging age discrimination.

**II.  Haw. Rev. Stat. § 378-2 Disability Discrimination Claim**

**A.   Plaintiff's Allegations of Discrimination**

Count I of the Complaint alleges Defendant
discriminated against Plaintiff on the basis of disability, in
violation of Haw. Rev. Stat. § 378-2(a)(1)(A).  [Complaint at
¶ 11.]  She states that, after falling and injuring herself in
October 2012, she had ongoing medical impairments in her hand,
shoulder, ankle, and hip.  [Bach Decl. at ¶ 3.]  Plaintiff
claims she was disabled and unable to work between April 17,
2015 and September 2015.  [Id. at ¶ 5.]  The allegations of

discrimination arise from Plaintiff's "early February 2016"
request for a reasonable accommodation for her disability, the
accommodation being assignment to "work assignments closer to
her home and the company offices so she did not need to walk as
much as before." [Complaint at ¶ 9.C.] Plaintiff alleges
Defendant failed to accommodate her request and that "[t]he
actions of Defendant's agents and employees were in violation of
Hawaii Revised Statutes § 378-2[(a)](1) . . . in that Plaintiff
was wrongfully terminated, and suffered discrimination in terms,
conditions, and privileges of [her] employment due to her age
and a disability." [Id. at ¶ 11.]

B.    **Standard for § 378-2(a)(1) Claims at Summary Judgment**

Section 378-2(a)(1)(A) makes it an unlawful
discriminatory practice "[f]or any employer to refuse to hire or
employ or to bar or discharge from employment, or otherwise to
discriminate against any individual in compensation or in the
terms, conditions, or privileges of employment" because of a
person's disability. "[B]ecause the definitions of disability
in the ADA and HRS § 378-2 are substantially identical, the
Hawaii Supreme Court has expressly adopted 'the [ADA] analysis
for establishing a prima facie case of disability discrimination
under HRS § 378-2,'" "and looks 'to the interpretations of
analogous federal laws by the federal courts for guidance.' "
Thorn v. BAE Sys. Haw. Shipyards, Inc., 586 F. Supp. 2d 1213,

12

1219 n.5 (D. Hawai`i 2008)(citing <u>French v. Hawaii Pizza Hut,</u>
<u>Inc.</u>, 105 Hawai`i 462, 467, 99 P.3d 1046, 1050 (2004)).
Accordingly, the ADA claim framework is used to analyze § 378-2
claims.

On a motion for summary judgment on disability
discrimination claims:

> The court applies the familiar burden-
> shifting analysis derived from <u>McDonnell Douglas</u>
> <u>Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36
> L. Ed. 2d 668 (1973), to claims of discrimination
> on account of a disability. <u>See, e.g.</u>, <u>Raytheon</u>
> <u>Co. v. Hernandez</u>, 540 U.S. 44, 49-50, 124 S. Ct.
> 513, 157 L. Ed. 2d 357 (2003) (applying <u>McDonnell</u>
> <u>Douglas</u> burden shifting framework to [Americans
> with Disabilities Act ("ADA")] disability
> discrimination claim); <u>Thorn v. BAE Sys. Haw.</u>
> <u>Shipyards, Inc.</u>, 586 F. Supp. 2d 1213, 1218-19
> (D. Haw. 2008).
>
> Under this burden-shifting analysis,
> Plaintiff must first establish a prima facie
> disability discrimination claim. <u>See</u>, <u>e.g.</u>,
> <u>Raytheon</u>, 540 U.S. at 49 n.3, 124 S. Ct. 513.
> Plaintiff must put forth evidence that she:
> (1) is "disabled" within the meaning of the
> statute; (2) is a "qualified individual" (that
> is, she is able to perform the essential
> functions of her job, with or without reasonable
> accommodations); and (3) suffered an adverse
> employment action because of her disability —
> <i>i.e.</i>, Defendant failed to reasonably accommodate
> her disability. <u>See, e.g.</u>, <u>Samper v. Providence</u>
> <u>St. Vincent Med. Ctr.</u>, 675 F.3d 1233, 1237 (9th
> Cir. 2012) (citing 42 U.S.C. § 12112(a),
> (b)(5)(A) (requiring reasonable accommodation)).
>
> "At the summary judgment stage, the
> 'requisite degree of proof necessary to establish
> a prima facie case . . . is minimal and does not
> even need to rise to the level of a preponderance
> of the evidence.'" <u>Lyons v. England</u>, 307 F.3d

1092, 1112 (9th Cir. 2002) (quoting <u>Wallis v.</u>
<u>J.R. Simplot Co.</u>, 26 F.3d 885, 889 (9th Cir.
1994)).

> If Plaintiff establishes her prima facie
> case, the burden then shifts to Defendant to
> articulate a legitimate, nondiscriminatory reason
> for its employment action.  <u>Raytheon</u>, 540 U.S. at
> 49 n.3, 124 S. Ct. 513.  If Defendant proffers
> such a reason, "the presumption of intentional
> discrimination disappears, but the plaintiff can
> still prove disparate treatment by, for instance,
> offering evidence demonstrating that the
> employer's explanation is pretextual."  <u>Id.</u> . . .

<u>Vanhorn v. Hana Grp., Inc.</u>, 979 F. Supp. 2d 1083, 1090–91 (D.

Hawai`i 2013) (some alterations in <u>Vanhorn</u>) (footnote omitted).

As detailed below, there is an absence of a genuine

dispute of material fact.  <u>See</u> Fed. R. Civ. P. 56(a) (a party is

entitled to summary judgment "if the movant shows that there is

no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law").  Plaintiff has not

established her prima facie case.  Even if she had established,

there is no genuine dispute that Defendant had a legitimate,

nondiscriminatory, and unrebutted basis for terminating

Plaintiff, and summary judgment is merited.

## C.    **Plaintiff's Prima Facie Case**

### 1.    **Disability**

The ADA defines disability as "(A) a physical or

mental impairment that substantially limits one or more of the

major life activities of such individual; (B) a record of such

an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). There is evidence in the record suggesting that Plaintiff has a disability. [CSOF, England Decl., Exh. 38 (Medical note from Bernard Porter, M.D.).] Defendant does not contend that Plaintiff is not disabled. See Mem. in Supp. of Motion at 15 (addressing the second element in the analysis without addressing the disability element). Plaintiff has therefore satisfied the first element.

## 2. Qualified Individual

"The ADA defines a 'qualified individual' as an individual 'with a disability who, **with or without reasonable accommodation**, can perform the essential functions of the employment position that such individual holds or desires.'" Dark v. Curry Cnty., 451 F.3d 1078, 1086 (9th Cir. 2006) (quoting 42 U.S.C. § 12111(8)) (emphasis in original). "Essential functions" of a job are the "fundamental job duties of the employment position . . . not includ[ing] the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). Although Plaintiff bears the burden of establishing her prima facie case, Defendant "has the burden of production in establishing what job functions are essential[.]" Samper, 675 F.3d at 1237.

Vanhorn, 979 F. Supp. 2d at 1094 (alterations and emphasis in Vanhorn). In determining essential job functions, the ADA provides

that "consideration shall be given to the employer's judgment as to what functions of the job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the

15

> essential functions of the job." 42 U.S.C.
> § 12111(8). "Such evidence, however, is not
> conclusive[.]" <u>Rohr v. Salt River Project Agri.
> Improvement & Power Dist.</u>, 555 F.3d 850, 864 (9th
> Cir. 2009); <u>see also</u> 29 C.F.R. § 1630.2(n)(3)
> (itemizing additional factors to consider
> including the amount of time spent performing the
> function, consequences of not requiring the
> employee to perform the function, and work
> experience of current and past employees in that
> or similar jobs).

<u>Id.</u> (alteration in <u>Vanhorn</u>). Additionally, on the burden of proof, "the plaintiff also bears the burden of establishing that he can perform these essential functions 'with[] or without reasonable accommodation.'" <u>Yonemoto v. McDonald</u>, 114 F. Supp. 3d 1067, 1113 (D. Hawai`i 2015) (some citations omitted) (quoting <u>Bates v. United Parcel Serv., Inc.</u>, 522 F.3d 974, 994 (9th Cir. 2007) (en banc)), *aff'd sub nom.*, <u>Yonemoto v. Shulkin</u>, 725 F. App'x 482 (9th Cir. 2018).

With regard to Plaintiff's essential job functions, Defendant presents evidence that Plaintiff's primary job responsibility was to evaluate Providers for compliance with state regulations by conducting on-site reviews four out of five days every week. <u>See</u> CSOF at ¶ 5 (some citations omitted) (citing Lee Decl. at ¶ 10; England Decl. at ¶¶ 5-13, 18-23, 33-37, 45, 109-13; England Decl., Exh. 7 (Job Description for CM position in Hawai`i)); CSOF at ¶¶ 8-9 (citations omitted).

The physical requirements listed in the Compliance Manager Job Description include: prolonged or considerable

walking, standing or sitting; ability to lift, carry, push or pull supplies or equipment; considerable reaching, stooping, bending, kneeling or crouching; ability to drive a car and/or fly in a plane; visual acuity and hearing to perform required duties; ability to read and write in English; and finger dexterity to operate equipment. [England Decl., Exh. 7 at 1-2.] Defendant argues that, because Plaintiff was unable to drive for more than forty minutes at a time, she was unable to perform the essential duty of conducting provider reviews. [Mem. in Supp. of Motion at 18.] "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citation omitted). Here, Defendant has met its summary judgment burden of identifying the portions of the record supporting its Motion.

In response, Plaintiff argues that she would have been able to perform the essential function of her position if Defendant had accommodated her by assigning her visits closer to her home and office. She also emphasizes that she informed Defendant that, if such assignments were not possible, "it would not be an issue, because she could just get off the highway if she needed to." [England Decl. at ¶ 212.] Both parties admit

that Plaintiff told Defendant she did not need her assigned
Providers to be within a forty-minute drive because she could
pull off the highway while driving.  [CSOF at ¶ 45.]  Plaintiff
alleges this accommodation request for the first time in her
opposition memorandum.  In her Complaint, the only accommodation
request raised is the accommodation "for her disability in the
form of being assigned work assignments closer to her home and
the company offices so she did not need to walk as much as
before."  [Complaint at ¶ 9.C.]

Fed R. Civ. P. 8 requires the plaintiff's allegations
in the complaint to give the defendant fair notice of what the
plaintiff's claim is and the grounds upon which it rests.
Pickern v. Pier 1 Imports, Inc., 457 F.3d 963, 968 (9th Cir.
2006) (internal citation and quotation marks omitted).
Generally, a party cannot oppose a motion for summary judgment
by raising theories that lie outside the scope of her pleadings.
See Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989,
991-92 (9th Cir. 2006) ("summary judgment is not a procedural
second chance to flesh out inadequate pleadings") (citation and
quotation marks omitted).

Here, the Complaint only gave Defendant notice of a
claim for relief on the ground that Plaintiff was denied the
accommodation of being assigned work closer to her home and
office.  [Complaint at ¶ 9.C.]  In her memorandum in opposition,

Plaintiff raises a new ground for relief, that she was denied the accommodation of taking driving breaks after forty minutes of driving. [Mem. in Opp. at 13-14.] Both allegations are theories of denial of accommodation. However, the grounds upon which the "take-a-break" accommodation are based are outside the scope of pleadings that only contain a claim for a "forty-minute total limit" accommodation. Changing from one accommodation request to another changes everything from the reasonableness assessment, the geographic area available to Defendant to assign Plaintiff to, and the number of Providers she could see in a month. Defendant did not have notice of that claim. It is an improper attempt to add a theory outside the scope of the pleadings at the summary judgment stage, and thus the Court need not consider it. Therefore, the Court will review the Motion only based on Plaintiff's accommodation request of a forty-minute total limit, not based on the take-a-break accommodation.

The issue is: whether Plaintiff would be able to perform the essential functions of the job if her assignments were limited to Providers within a forty-minute total drive. The record must be viewed in the light most favorable to Plaintiffs, the nonmoving party, and all inferences must be drawn in Plaintiffs' favor. See S.R. Nehad v. Browder, 929 F.3d 1125, 1132 (9th Cir. 2019). The uncontroverted facts demonstrate that Plaintiff cannot perform the essential elements

of her job if assignments were limited to Providers within a
forty-five-minute drive.  Only two percent of Providers were
within a forty-minute drive of Plaintiff.  As a result,
assigning her to only those Providers would accomplish less than
one week's worth of full-time work per month.  [CSOF at ¶ 44
(citing England Decl. at ¶¶ 57-69, 209, Exh. 13 (List of
Provider Locations (Addresses Redacted)), Exh. 14 (List of
Provider Locations (Addresses Redacted)); CSOF, Decl. of
Jennifer L. Gitter ("Gitter Decl."), Exh. 1 (excerpts of trans.
of 4/4/19 depo. of Pltf. ("Bach Depo. 1")) at 16:3-10, 96:18-
97:18).]  Furthermore, Plaintiff does not allege she would be
able to perform her essential duties if limited to a forty
minute driving range.  See Responsive CSOF.  Thus, Plaintiff
would be unable unqualified for the position.[4]  Plaintiff
therefore has failed to establish the element of her prima facie
case that she is qualified for the position.

Even accepting Plaintiff's verbal disclaimer of her
previous accommodation as a new accommodation request, no
evidence has been offered that Plaintiff would be a qualified

_____

[4] Defendant does not raise the issue that Plaintiff is
unqualified in reference to her termination from the position in
question for her past performance and behavior.  Cf. Yonemoto,
114 F. Supp. 3d at 118-19 (noting that the plaintiff had
requested accommodation for his diabetes but was unable to
perform his essential functions because of his personality
problems, constant questions, aggressive conduct, and inability
to take constructive criticism, and thus was not qualified).

individual if provided with the take-a-break accommodation. Because Plaintiff's declaration was entirely conclusory as to this issue, it is insufficient at summary judgment. See Head v. Glacier Nw. Inc., 413 F.3d 1053, 1059 (9th Cir. 2005) (noting the "longstanding precedent that conclusory declarations are insufficient to raise a question of material fact"), *abrogated on other grounds by* Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013). Plaintiff cannot carry her burden of proof on this element and her prima facie case fails on the issue of reasonable accommodation.

Plaintiff thus fails to establish a prima facie case. Further, although the Court could end its analysis here, it does not. Rather, for completeness, it examines whether, even assuming Plaintiff did establish her prima facie case, a genuine dispute of material fact exists that Defendant's legitimate, nondiscriminatory reason for Plaintiff's termination was not pretextual.[5]

---

[5] While not raised by Defendant, the Court notes, in the interest of completeness, Plaintiff was required to establish the element of causation. In order to establish a prima facie case, a plaintiff is required to prove that the adverse employment action would not have occurred but for her disability. Murray v. Mayo Clinic, 934 F.3d 1101, 1105 (9th Cir. 2019) Plaintiff's chances of success on this element are limited, as she already admitted the facts in the CSOF, including those that described her poor performance and communication unrelated to her disability and request for accommodation, and her failure to meet the standards of her improvement plan and probation status.

### D. **Defendant's Legitimate, Nondiscriminatory Reason**

If Plaintiff was able to establish her prima facie disability discrimination claim, the burden would then shift to Defendant to articulate a legitimate, nondiscriminatory reason for its employment action. See Vanhorn, 979 F. Supp. 2d at 1091 (citing Raytheon, 540 U.S. at 49 n.3).

> To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's [adverse employment action]. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-56 (1981) (footnotes omitted).

Defendant has presented admissible evidence that Plaintiff was terminated due to performance and conduct unrelated to her disability. See CSOF at ¶¶ 6-41. As stated in the uncontested portion of the CSOF, Defendant's documentation of Plaintiff's unsatisfactory performance and behavior began in 2011. [CSOF at ¶ 14 (citing Ockerman Decl. at ¶¶ 13-19, Exh. 50

22

(Employee Self Performance Evaluation dated July 29, 2011);
Exh. 51 (Corrective Action Plan for Sunny Bach dated July 29,
2011); Exh. 52 (Plaintiff's response to the Corrective Action
Plan dated August 4, 2011); Exh. 53 (Employee Performance
Evaluation dated December 8, 2011)).] Defendant recorded
Plaintiff's failure to meet expectations with regard to
timeliness, quality of work, usage of the proper regulations,
formatting of Corrective Action Reports, and interpersonal
interactions with Providers and coworkers, resulting in
complaints starting with her performance evaluation in 2011
until her termination on February 11, 2016. [CSOF at ¶ 19
(citing England Decl. at ¶¶ 84-88); CSOF at ¶ 20 (citing England
Decl. at ¶¶ 89-90, Exh. 15 (2012 Employee Performance
Evaluation)); CSOF at ¶ 22 (citing England Decl. at ¶¶ 92-93,
Exh. 16 (2014 Employee Performance Evaluation)); CSOF at ¶ 30
(citing England Decl. at ¶ 134); CSOF at ¶ 31 (citing England
Decl. at ¶¶ 135-137); CSOF at ¶ 36 (citing England Decl. at
¶¶ 53-54 73, 150-51, 160-61, 164-75' Exh. 26 (Anti-Bullying
Policy signed by Plaintiff November 4, 2015); Exh. 28 (email
containing Interpretive Guidelines dated September 21, 2015);
Exh. 30 (undated Summary of non compliance by Sunny Bach between
9/21/15 and 1/31/2015 [sic]).] Defendant argues Plaintiff was
terminated in in response to the listed deficiencies and
behaviors. Noncompliance with performance and interpersonal

communication standards is sufficient justification for the adverse employment action. See Wexler v. Jensen Pharm., Inc., 739 F. App'x 911, 913 (9th Cir. 2018) (affirming summary judgment for the defendant in an age discrimination employment case where the plaintiff had performance issues that the defendant articulated as a legitimate, nondiscriminatory reason for termination). Furthermore, Plaintiff was put on notice that her failure to meet performance and communication standards, pursuant to an improvement plan and probation designation, would result in her termination. [CSOF at ¶¶ 34, 36.] Defendant has thus produced evidence that Plaintiff was terminated for legitimate, nondiscriminatory reasons.

E.    **Plaintiff's Burden to Prove Pretext**

Where Defendant has satisfied its burden of production in that Plaintiff's termination was based on her poor work performance and inappropriate behavior, and not for discriminatory reasons, the burden shifts back to Plaintiff.

> The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. See McDonnell Douglas, 411 U.S., at 804-805.

Burdine, 450 U.S. at 256.

Plaintiff fails to address that Defendant's proffered reasons was not the true reason for her termination. Her only argument is that there was a temporal proximity between her inquiry and termination. This is woefully inadequate to raise a pretext argument: "a party opposing a summary judgment motion must produce **specific** facts showing that there remains a genuine factual issue for trial and evidence significantly probative as to any material fact claimed to be disputed." Collings v. Longview Fibre Co., 63 F.3d 828, 834 (9th Cir. 1995) (brackets, quotation marks and citation omitted) (emphasis in Collings). Plaintiff offers no specific facts to raise genuine issues of material fact.

As no admissible evidence exists which raises a triable issue of fact that Plaintiff's termination was pretextual, Plaintiff fails to carry her burden on the final phase of the summary judgment analysis. Cf. Dark, 451 F.3d at 1085 (reversing a grant of summary judgment where the employer's stated reason for termination was vehicle safety related, and the terminated employee submitted evidence in the form of accounts of six vehicular accidents that did not result in termination). On this basis, the Motion is granted as to the

portion of Count I alleging discrimination on the basis of disability.

## III. __Haw. Rev. Stat. § 378-2(a)(2) Retaliation Claim__

In Count II of the Complaint, Plaintiff alleges retaliation under § 378-2(a)(2) based on her opposition to disability discrimination and her request for a reasonable accommodation. The __McDonald-Douglas__ burden shifting analysis also applies to §378-2(a)(2) retaliation claims. Thereby,

> a retaliation claim under HRS § 378-2(2) is subject to the following three-part test: (1) the plaintiff must first establish a prima facie case of such retaliation by demonstrating that (a) the plaintiff (i) "has opposed any practice forbidden by [HRS chapter 378, Employment Practices, Part I, Discriminatory Practices] or (ii) has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part," HRS § 378-2(2), (b) his or her "employer, labor organization, or employment agency [has] . . . discharge[d], expel[led], or otherwise discriminate[d] against the plaintiff," __id.__, and (c) "a causal link [has] exist[ed] between the protected activity and the adverse action," __Ray [v. Henderson]__, 217 F. 3d [1234,] 1240 [(9th Cir. 2000)] (citation omitted); (2) if the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action, __see__ __id.__; __Shoppe [v. Gucci Am., Inc.]__, 94 Hawai`i [368,] 378-79, 14 P.3d [1049,] 1059-60 [(2000)]; and (3) if the defendant articulates such a reason, the burden shifts back to the plaintiff to show evidence demonstrating that the reason given by the defendant is pretextual. . . .

<u>Schefke v. Reliable Collection Agency, Ltd.</u>, 96 Hawai`i 408, 426, 32 P.3d 52, 70 (2001) (some alterations in <u>Schefke</u>) (some citations omitted), *as amended* (Oct. 11, 2001).

Even if assumed, for purposes of the instant Motion, the first two elements of the prima facie case of retaliation are satisfied, Plaintiff fails to demonstrate her protected activity was causally related to her termination. Temporal proximity alone generally has not been sufficient to establish causation unless the temporal proximity is very close. <u>Clark Cty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001) (citations omitted). Simply pointing to the temporal proximity between Plaintiff's request for an accommodation and her termination is insufficient to infer causation. To the extent that any of her other protected activities can be said to be close in time to her termination, that temporal proximity is also insufficient to demonstrate causation.

Moreover, Defendant has articulated a legitimate, nondiscriminatory reason for its decision. Plaintiff must then, but cannot, demonstrate that this reason was merely a pretext for a discriminatory motive. Defendant presents admissible evidence of Plaintiff's long history of documented noncompliance with performance and conduct standards to support its legitimate nondiscriminatory reason for termination. Plaintiff only argues that her termination came soon after her request for

27

accommodation. [Responsive CSOF at ¶ 46.] Temporal proximity

is insufficient to demonstrate pretext on a motion for summary

judgment, and thus a triable question of fact on the issue of

pretext has not been raised. The Motion is therefore granted as

to Count II.

## IV. **Haw. Rev. Stat. § 378-62 Whistleblower Claim**

### A. **Standard for § 378-62 Claims at Summary Judgment**

Section 378-62 of the HWPA provides in relevant part:

An employer shall not discharge, threaten, or
otherwise discriminate against an employee
regarding the employee's compensation, terms,
conditions, location, or privileges of employment
because:

(1) The employee, or a person acting on
behalf of the employee, reports or is about
to report to the employer, or reports or is
about to report to a public body, verbally
or in writing, a violation or a suspected
violation of:

(A) A law, rule, ordinance, or
regulation, adopted pursuant to law of
this State, a political subdivision of
this State, or the United States[.]

A § 378-62 claim has three requirements. First, an

employee must have "engaged in protected conduct" as defined by

HRS § 378-62(1). Griffin v. JTSI, Inc., 654 F. Supp. 2d 1122,

1131 (D. Hawai`i 2008) (citing Crosby v. State Dept. of Budget &

Fin., 76 Hawai`i 332, 342, 876 P.2d 1300, 1310 (1994)). Second,

the employer must take some "adverse action" against the

employee. Id. And third, there must be "a causal connection

28

between the alleged retaliation and the 'whistleblowing.'"  Id.
To meet the causal connection requirement, an "employer's
challenged action must have been taken 'because' the employee
engaged in protected conduct."  Id.  In Crosby, the Supreme
Court of Hawai`i adopted the McDonnell-Douglas burden shifting
framework for HWPA claims.  Therefore, a plaintiff can prove
retaliation either through direct evidence, or by demonstrating
that her protected activity played a role in the adverse
employment action.  Chan v. Wells Fargo Advisors, LLC, 124 F.
Supp. 3d 1045, 1055 (D. Hawai`i 2015).  The defendant employer
can then defend by showing that the adverse employment action
would have occurred regardless of the protected activity.  Id.

     **B.**   **Application of Standards**

     For the purposes of the instant Motion, the first two
elements of an HWPA claim ("protected activity" and "adverse
action") are not at issue.  The only contested issue is
causation.  See Mem. in Supp. at 31.  The causal connection
requirement has two stages.  "First, the employee must make a
prima facie showing 'that his or her protected conduct was a
"substantial or motivating factor" in the decision to terminate
the employee.'"  Griffin, 654 F. Supp. 2d at 1131 (quoting
Crosby, 76 Hawai`i at 342, 876 P.2d at 1310).  "Second, once the
employee makes its prima facie showing, the employer must then
'defend affirmatively by showing that the termination would have

29

occurred regardless of the protected activity.'" Id. at 1132

(quoting Crosby, 76 Hawai`i at 342, 876 P.2d at 1310 (internal

quotation marks and citation omitted)).

In her Complaint, Plaintiff alleges her termination

was in violation of § 378-62 "due to Plaintiff's report of a

violation of law." [Complaint at ¶ 19.] Plaintiff states that,

on May 1, 2015, she reported to Defendant that terminating her

for her inability to return to work was illegal and that

Defendant should check with its lawyers. Bach Decl. at ¶¶ 6-9;

see also CSOF at ¶ 26. In addition, she states that she became

aware that Defendant did not carry disability coverage. [Bach

Decl. at ¶¶ 6-9.] Plaintiff's report to Defendant is protected

activity under the HWPA. Plaintiff alleges the adverse

employment action was due to her protected activity. [Complaint

at ¶ 19.]

Neither the Complaint nor the memorandum in opposition

explains the factual basis as to how Plaintiff's termination was

caused by her protected activity. Plaintiff implies her

protected activity was a substantial motivating factor in her

termination, (Mem. in Opp. at 17) but does not present any

direct evidence for this supposition. Plaintiff's only argument

appears to be an implied temporal proximity allegation. See

Responsive CSOF at ¶ 46.

In a HWPA analysis, a plaintiff is permitted to use temporal proximity as circumstantial evidence that the plaintiff's protected conduct was a substantial or motivating factor in the adverse employment action. Griffin, 654 F. Supp. 2d at 1132. Here, Plaintiff states her termination came after her accommodation request and engaged in HWPA protected activity. [See Bach Decl. (Plaintiff's protected activity occurred on May 1, 2015, her termination occurred on February 11, 2016).] However, Plaintiff engaged in the protected activity more than nine months before her termination. This is a significant lapse of time. Cf. Chan, 124 F. Supp. 3d at 1056 (denying summary judgment in part on temporal proximity when the time between the protected activity and the first adverse action was approximately fifteen days, and the ultimate adverse action was within approximately fifty days). The Ninth Circuit previously concluded an eight-month gap between a plaintiff's protected activity and the retaliation does not permit an inference of causation. Woods v. Washington, 475 F. App'x 111, 113 (9th Cir. 2012) (citing Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002)). Temporal proximity cannot be found where there is a the nine-month gap replete with intervening events, including Provider complaints, coworker complaints, and a negative performance review. The nine-month delay between her protected activity and the adverse

employment action is insufficient to support a permissible inference that Plaintiff's protected activity played a role in her termination.  See Crosby, 76 Hawai`i at 342, 876 P.2d at 1310 (the test is whether the protected activity played a role in the employment action).  Plaintiff has not made a prima facie case for retaliation.

Even if Plaintiff had carried her burden as to the substantial or motivating factor inquiry, summary judgment is still merited.  Employers are "entitled to summary judgment if they can demonstrate that they 'would have reached the same adverse employment decision even in the absence of the employee's protected conduct.'"  Anthoine v. N. Cent. Ctys. Consortium, 605 F.3d 740, 752 (9th Cir. 2010) (quoting Eng v. Cooley, 552 F.3d 1062, 1072 (9th Cir. 2009)).  "In other words, [they] may avoid liability by showing that the employee's protected speech was not a but-for cause of the adverse employment action."  Id. (alteration in Anthonie) (internal citations omitted).  Furthermore, as explained in Griffin, "[a]n employer may negate causation ex post facto by presenting evidence of other reasons for termination outside of the protected conduct, even if the other reasons were unknown to the employer at the time of termination."  654 F. Supp. 2d at 1132 (internal citation omitted).

Here, Defendant meets its burden by presenting uncontested evidence that it would have terminated Plaintiff regardless of her protected activity. Plaintiff does not disputed that she consistently received negative performance reviews, complaints, and corrective action plans, starting in 2011, resulting in her placement on probationary status in 2015. [CSOF at ¶¶ 14, 19, 30-34, 39-40.] Plaintiff also failed her probationary period, for which she was notified would result in her termination. [CSOF at ¶ 34.] These documented instances of poor performance provide ample, nondiscriminatory reasons for Plaintiff's termination. Defendant has met the burden described in Griffin by demonstrating that the termination was because of legitimate reasons, and thus negating that it was caused by her protected conduct.

Defendant has also shown that Plaintiff's protected conduct was not the but-for cause of her termination. Because her protected activity was not the but-for cause of her termination, Plaintiff's HWPA claim is fatally flawed. Therefore, the Motion is granted as to this portion of Count III.

As the operative facts have been admitted by both sides in the CSOF and Responsive CSOF, there are no triable questions of fact to prevent the entry of summary judgment.[6]

## CONCLUSION

On the basis of the foregoing, Defendant's Motion for Summary Judgment, filed June 26, 2019, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is DENIED AS MOOT as to the portion of Count I alleging age discrimination, because that claim has been dismissed, and the Motion is GRANTED insofar as summary judgment is granted in favor of Defendant as to all of Plaintiff's other claims. There being no remaining claims in this case, the Clerk's Office is DIRECTED to enter judgment and close this case immediately.

IT IS SO ORDERED.

---

[6] Plaintiff alluded to a potential HWPA claim based on a complaint she made to the DOL in October 2013, regarding Defendant's failure to deposit 401(k) contributions into her account. [Bach Decl. at ¶ 4.] This claim does not appear in the Complaint. While the complaint to the DOL is included as an alleged fact in Plaintiff's opposition memorandum, it does not appear in her discussion of Plaintiffs HWPA Claim. Defendant raised and addressed the issue of Plaintiff's DOL complaint, arguing it was time barred. [Mem. in Supp. of Motion at 29-30.] Plaintiff did not address the DOL complaint in her response. [Mem. in Opp. at 16-17.] Therefore, the Court does not construe Count III as alleging a HWPA claim based on her complaint to the DOL.

DATED AT HONOLULU, HAWAI`I, November 15, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

SONIA B. BACH VS. COMMUNITY TIES OF AMERICA, INC.; CV 18-00103
LEK-WRP; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT